UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CURO HEALTH SERVICE LLC<br>AND HOSPICE OF MAINE LLC,<br><br>      Plaintiffs<br><br>      v.<br><br>ERICA LILLY, BRISTOL HOSPICE<br>LLC, AND BRISTOL HOSPICE –<br>BANGOR LLC,<br><br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:24-cv-417-LEW |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

Defendant Erica Lilly is a registered nurse and former employee of Plaintiffs Curo Health Service LLC and Hospice of Maine LLC, who together do business as Gentiva (hereafter "Gentiva"). Lilly is presently the employee of Defendants Bristol Hospice LLC and Bristol Hospice–Bangor LLC (hereafter jointly referred to as "Bristol"). In this action, Gentiva alleges that Lilly and Bristol have, among other things, tortiously interfered with Gentiva's business interests by spreading false information harmful to Gentiva's reputation and standing, and that Lilly breached the confidentiality, noncompetition, and nonsolicitation covenants of her employment agreement after resigning from her position with Gentiva.[1]

---

[1] Subject-matter jurisdiction is based on Plaintiffs' additional civil claim under the federal Defense of Trade Secrets Act, 18 U.S.C. § 1836, though it also appears that diversity of citizenship would support the exercise of jurisdiction.

The matter is before the Court on Gentiva's Motion for Temporary Restraining Order and Preliminary Injunction ("Mot.") (ECF No. 3). Through its Motion, Gentiva seeks a court order that would sever Lilly from her current employment relationship with Bristol, preclude her from participating in any solicitation of Gentiva personnel or referral sources, compel her to return to Gentiva confidential Gentiva documents she may have in her possession, and enjoin both Lilly and Bristol from making false statements concerning Gentiva's office culture or its preparedness to provide hospice services.

Following a review of Plaintiffs' Motion, Defendants' Response, and Plaintiffs' Reply, and the associated record, and based on the arguments and evidence contained therein and presented at oral argument, Plaintiff's request for a temporary restraining order is denied, and its request for a preliminary injunction is denied without prejudice.

## BACKGROUND

Gentiva provides hospice and other healthcare services to individuals. Like Gentiva, Bristol also provides hospice and related services. Both Gentiva and Bristol obtain and identify their clients and patients through referral sources, such as hospitals, residential facilities, and nursing homes. Employees and agents of those referral sources identify individuals who they believe could benefit from hospice care and refer them to agencies such as Gentiva and Bristol. Since 2020, Gentiva has developed business relationships with referral sources in Maine, resulting in either contractual or advantageous relationships between Gentiva and those referral sources. In 2024, Bristol expanded its operations into Maine.

In August of 2022, Lilly accepted employment as an Administrator RN at a Gentiva facility in Brewer. As Administrator RN, Lilly was an officer of Gentiva's Maine operation. This gave Lilly access to Gentiva's confidential and proprietary information, including lists of referral sources, lists of Gentiva patients and clients and their healthcare needs, and protected Gentiva personnel information.

As a condition of her employment, Gentiva required that Lilly execute Gentiva's Noncompetition, Nonsolicitation, and Confidentiality Agreement. Lilly did so. The covenants contained in the Agreement required Lilly to abide by the following conditions:

> a. During and after the termination of her employment from Gentiva, to maintain the confidentiality of any of Gentiva's Confidential Information;
>
> b. During and after the termination of her employment from Gentiva, to take all necessary and appropriate steps to safeguard Gentiva's Confidential Information and to protect it against disclosure or misuse;
>
> c. To return all of Gentiva's Confidential Information, among other things, upon the termination of her employment from Gentiva;
>
> d. To refrain from disclosing Gentiva's Confidential Information to any person or entity other than Gentiva;
>
> e. To refrain from "be[ing] employed by or perform[ing] any work for hire that is the same or similar to the work performed for [Gentiva] . . . for a[n] entity that offers hospice care" within a "seventy-five (75) mile radius from any [Gentiva] location or program to which [Ms. Lilly] was assigned."
>
> f. To refrain from soliciting Gentiva's employees to leave their employment with Gentiva for a period of eighteen (18) months following the termination of her employment from Gentiva; and
>
> g. To refrain from soliciting Gentiva's customers, patients, or referral sources to cease or reduce their business with Gentiva or send business to a competitor of Gentiva.

Noncompetition, Nonsolicitation, and Confidentiality Agreement (ECF No. 1-2).

Lilly commenced employment with Gentiva on August 15, 2022, and resigned her employment in April of 2024. Lilly accepted employment with Bristol shortly after leaving Gentiva. The duties Lilly performs at Bristol are similar to those that she once performed for Gentiva and predominantly consist of administering and overseeing the provision of hospice care rather than soliciting the business of referral sources. She does however communicate with referral sources from time to time to discuss the ability of Bristol to provide hospice services to patients.

Gentiva claims that Lilly breached her Agreement with Gentiva by going to work for Bristol in the same geographic area within six months of her departure from Gentiva, retaining and utilizing Gentiva's confidential information, disparaging Gentiva when speaking with referral sources, and soliciting referral sources and employees to shift from Gentiva to Bristol. On June 14, 2024, legal counsel for Gentiva contacted Bristol's legal counsel to inform him of Gentiva's concerns regarding Lilly's breach of the Agreement, and to express the opinion that Bristol was ignoring Lilly's violations of Gentiva's post-employment covenants.

The record contains evidence that, both before and since leaving Gentiva, Lilly has communicated with referral sources from which both Gentiva and Bristol seek to obtain patient referrals. There is also evidence that other Gentiva employees left its employ and found employment with Bristol and that some may have remarked negatively on Gentiva's office culture and capacity to serve when speaking with referral sources. Examples of referral sources who allegedly received such representations from Bristol employees include WaldoHospital, Pittsfield Community Care, and Dexter Health Care. A

representative of each of these organizations has offered a declaration in support of Gentiva's Motion. Decl. of Irene Meyers; Decl. of Tamatha Fuller; Decl. of Ryan Stroud (ECF No. 3-3). In addition, a representative of Orono Commons reports having a discussion with Lilly that could be characterized as a solicitation to send hospice referrals to Bristol. Decl. of Chelsea Pazera (ECF No. 3-2).

On the other hand, there is evidence—declarations from witnesses familiar with Gentiva operations and office culture—that the remarks concerning Gentiva's preparedness to serve [2] and office culture are true and that some former Gentiva employees are prepared to testify that they moved to Bristol of their own accord, without solicitation from Lilly, due to their dissatisfaction with Gentiva. Decl. of Crystal Clark (ECF No. 12-1); Decl. of Emily Ann McCausland (ECF No. 12-2); Decl. of Erica Lilly (ECF No. 12-3); Decl. of Laurie King (ECF No. 12-4); Decl. of Melissa Boudreau (ECF No. 12-5); Decl. of Griffin Madore (ECF No. 12-6). Lilly acknowledges that in her current position with Bristol she occasionally performs outreach to referral sources, "especially as part of making introductions on behalf of the Bristol team." Decl. of Erica Lilly ¶ 54.

Gentiva alleges that Lilly's departure from its employment occurred under circumstances that suggest she unlawfully made away with confidential documents. Verified Compl. ¶¶ 41–58; Decl. of Teresa Nadeau-Stack ¶¶ 18–24 (ECF No. 16-1). In response, Defendants have provided evidence of an innocuous departure. Decl. of Erica

---

[2] Gentiva asserts that some of the false statements indicated that Gentiva is going out of business or requested that referrals to it be redirected toward Bristol. I am not confident in the provenance of these alleged misrepresentations and they therefore do not factor into my discussion.

Lilly ¶¶ 22–39 (ECF No. 12-3); *see also* Decl. of Crystal Clark ¶¶ 5–6; Decl. of Laurie King ¶¶ 8–9.

Plaintiffs assert the following causes of action in their Complaint (ECF No. 1): (1) breach of contract; (2) tortious interference with a business relationship; (3) violation of the Defend Trade Secrets Act; (4) violation of the Maine Uniform Trade Secrets Act; (5) breach of the duty of loyalty; (6) defamation; and (7) aiding and abetting tortious conduct. For purposes of the Motion for Preliminary Injunction, Plaintiffs proceed exclusively on the Breach of Contract and Tortious Interference counts.[3] Mot. at 10-17.

## DISCUSSION

"To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). As the party seeking injunctive relief, Plaintiffs bear the burden of establishing that the factors weigh in their favor. *Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 117, 119-20 (1st Cir. 2011). Preliminary injunctive relief is an "extraordinary and drastic" form of equitable relief that warrants careful consideration. *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 347 (1st Cir. 2024).

---

[3] At oral argument, Plaintiff referred to its other causes of action. Based on the briefs, I hold Plaintiff to the breach of contract and tortious interference claims for purposes of the request for a temporary restraining order.

"Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996). On this issue "the district court is required only to make an estimation of likelihood of success and 'need not predict the eventual outcome on the merits with absolute assurance.'" *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) (quoting *Ross–Simons*, 102 F.3d at 16). Irreparable injury is also an essential requirement of a request for a preliminary injunction. In general, it consists of a substantial injury that is not readily compensable by means of a money damages award. *Ross-Simons of Warwick*, 102 F.3d at 19. While injury to a business's reputation or goodwill is often cited as irreparable because it is generally difficult to quantify, and although something of a sliding scale sometimes operates in relation to an especially strong showing on the merits, to truly be irreparable this kind of injury should ordinarily be capable of description as profound and threatening to the business's continued viability, or at least seriously disruptive to the ordinary operation of the market for its services. *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (collecting exemplar cases).

**A.     Breach of Contract**

"Under Maine law, the elements of a breach of contract claim are: (1) breach of a material contract term; (2) causation; and (3) damages." *Zhao v. CIEE Inc.*, 3 F.4th 1, 4 (1st Cir. 2021) (internal quotation marks omitted). Because this case involves a noncompetition covenant, Maine law also calls upon the court to consider the reasonableness of the covenant as a question of law based on "its duration, geographic area, and the interests sought to be protected." *Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995).

"Although Maine law does not permit non-compete agreements designed solely to prevent business competition," it generally allows them when they are designed "to preserve . . . trade secrets and other confidential information, including confidential product information, manufacturing processes and customer lists," provided that they are of reasonable duration and geographical impact. *Wausau Mosinee Paper Corp. v. Magda*, 366 F. Supp. 2d 212, 220 (D. Me. 2005).[4] Even in such cases, courts will evaluate non-competition agreements to ensure that they "sweep no wider than necessary to protect the business interests in issue." *Lord v. Lord*, 454 A.2d 830, 834 (1983). Furthermore, "because the reasonableness of a noncompetition agreement depends on the specific facts of the case, [courts] assess the agreement only as [the plaintiff] has sought to apply it and not as it might have been enforced on its terms." *Brignull*, 666 A.2d at 84. *See also Chapman & Drake v. Harrington*, 545 A.2d 645, 647 (Me. 1988) (same).

Gentiva would like an order that immediately restricts Lilly's employment, enforces and preserves its interest in confidentiality, and bars solicitation. I consider each request in turn.

### 1. *Employment*

Based on the record as it now stands, and assuming for present purposes that the six-month restriction on employment is reasonable, the fact finder would likely conclude

---

[4] "Recognizing that the enforcement of an employee's covenant not to compete with his former employer has the potential for greatly restricting that employee's capacity to support himself in his chosen occupation, . . . such covenants 'are contrary to public policy and will be enforced only to the extent that they are reasonable and sweep no wider than necessary to protect the business interests in issue.'" *Chapman & Drake v. Harrington*, 545 A.2d 645, 646-47 (Me. 1988) (quoting *Lord v. Lord*, 454 A.2d 830, 834 (Me.1983)).

at trial that Lilly breached the noncompetition covenant by promptly going to work for Bristol. However, I am not persuaded on this record that the fact finder would be able to arrive at a nonspeculative finding of any actual damages to date. Furthermore, although Lilly was subject to a six-month restriction on employment, Gentiva filed this action roughly nine months after Lilly left its employ. In the context of a plea for an equitable remedy that would preclude Lilly's continued employment with Bristol, Gentiva's delay fails to convey any real emergency in need of immediate, temporary restraint. "Equity, after all, ministers to the vigilant, not those who slumber upon their rights." *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 87 (1st Cir.1990). For these reasons, I am skeptical in terms of Gentiva's showing on both the merits and the existence of an irreparable injury in need of emergency relief, and therefore I decline to issue an order requiring Bristol to promptly sever Lilly from its employ.

    2. ***Confidentiality***

I am not persuaded on the current record that Gentiva is likely to demonstrate that Lilly's past or continuing relationship with Bristol involves the use or dissemination of confidential information. The concern for the protection of confidential information is the primary concern that animates Maine law's tolerance for noncompetition covenants, *see Wausau Mosinee Paper Corp.*, 366 F. Supp. at 220, and it appears that a real concern for misuse of confidential information may well be lacking in this case. More specifically, I am not persuaded that the current record would motivate the fact finder to conclude that Lilly misappropriated any confidential information in the first place, or that her current efforts for her new employer would gain any advantage from whatever confidential

9

information she might still be able to recall by memory. In the absence of a persuasive showing on the subject of confidentiality, I am at present skeptical of the reasonableness of enjoining Lilly in relation to the work she performs for Bristol and therefore deny the requested temporary restraining order.

### 3. Solicitation

I am likewise not persuaded that Gentiva is likely to demonstrate that Lilly lured away Gentiva employees to Bristol or that her involvement in soliciting referral sources takes advantage of confidential information she obtained from Gentiva. Although Gentiva states that the noncompetition covenant is not problematic because "[i]t simply requires Lilly to refrain from soliciting Gentiva's limited pool of employees, patients, and referral sources with whom Lilly had substantial contact during her employment with Gentiva," Mot. at 13, the identification of referral sources seems like something as sophisticated as bespoke algorithmic data analytics and more like something anyone in the industry would be able to gather from a Google search or the analog tool of pounding the pavement. Furthermore, there is nothing in the current record that would strongly support a finding that Lilly solicited individual employees and there is nothing at all to suggest she ever solicited hospice patients directly. I therefore conclude that the drastic remedy of a temporary restraining order is not warranted.

### B. Tortious Interference

To establish liability for tortious interference with a business relationship or prospective economic advantage a plaintiff must prove "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract

or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 798 A.2d 1104, 1110 (Me. 2002) (footnotes omitted).

Assuming for the sake of argument that the finder of fact may eventually conclude that there were instances in which a Bristol employee made a false statement of material fact to a referral source, which so far is at best equivocal, it is not yet evident that such interference caused any actual damages to Gentiva. Furthermore, even if the existence of damages is assumed, I do not see why the extraordinary and drastic remedy of a temporary restraining order is needed since a damages remedy could be computed and awarded based on Gentiva's eventual proof of the loss of a hospice patient it was otherwise prepared to serve. In other words, I am not prepared at this time to accept Gentiva's assertion that the alleged injury to its reputation and goodwill clears the irreparable injury hurdle.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 3) is DENIED. Denial of the request for a preliminary injunction is without prejudice.

SO ORDERED.

Dated this 30th day of December, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge